All right, I'm going to let you pronounce your name because I'm sure to mess it up. Morning, Your Honor. Robert Arambidi for Mr. Botello.  Okay. May it please the Court, Counsel for the Government. When Benji turns 13 years old, he stares himself in the mirror and proudly yet tentatively declares that he's a man. That's a scene from Keeping Up with the Steins, a movie about a young boy's bar mitzvah. And what's important about that is that that particular scene represents what sentencing is all about. The sins of each individual man are held against him and no others. In this particular case, you're here to decide whether or not the upward departure by doubling the minimum, or I'm sorry, the maximum sentence under the guidelines was reasonable. In this particular case, Judge Mazant took the guideline sentence maximum, 27 months, asked me why shouldn't I upwardly vary this sentence, and I gave him the reasons why he shouldn't. Those reasons that the judge were thinking about was that he had just sentenced a few months previously a young man who was here illegally, like Mr. Botello, and had killed three individuals. The mother and wife of those individuals who were killed quite eloquently spoke for about 20, 25 minutes in front of Judge Mazant. And it was a tragedy. And obviously that was still in Judge Mazant's mind when Mr. Botello's case came up. Mr. Botello had three DWIs, one of which was a DWI third, and he had been sentenced very lightly in the state courts for those DWIs. And Judge Mazant asked why he shouldn't upwardly depart based on those three DWIs because he felt the need to, quote, protect the public. Well, in doing so, he failed to recognize that, first of all, those individuals who were killed were not Mr. Botello's fault. Those individuals are, in fact, Mr. Rosales's fault when he killed them, not necessarily while driving while intoxicated. And so when he asked that particular question of me, I reminded him that there are state courts to address the DWIs. The guidelines take those DWIs into account in fashioning the guideline sentence. And further, at this point, he's going to be deported. And so the public is further protected by his absence from the country, a three-year term of supervised release. And so the protections are already there in place under the guideline scheme. While we were discussing his sentencing, surely his alcohol problem came up. And the judge issued his concern about that on the oral record, that he certainly was an alcoholic, that he certainly had a problem, alcohol problem, if not alcohol and drug, and that he wanted him to get some rehabilitation, and that he thought that a larger sentence, a longer sentence, doubling that to 54 months from 27 months, would afford him the opportunity to get that rehabilitation. The fact that he had in his mind three people dying from a previous case, and the fact that he is interested in getting the rehabilitative efforts to keep that from happening in Mr. Patel's future, are reasons why the sentence being doubled is unreasonable. Counsel, I've examined the transcript, as my colleagues likely have too, and it seems to me that it's hard to nail down what role rehabilitation had in the judge's decision-making. You no doubt will argue that it's clear. I find that it's unclear. Regardless, I'm certainly open to your argument. My question is sort of what standard we are applying. In the TAPIA, the Supreme Court says a court commits no error by discussing the opportunities for rehabilitation. And then we have elaborated on that. A TAPIA error occurs when rehabilitation is a dominant factor. Is that your argument, or are you coming at it from a different way? Are you saying what was stated by the judge shows he was making it a dominant factor, or am I going in the wrong direction to understand your argument? Yes, Your Honor, I believe he was making it a dominant factor, and on the oral record he pronounced that he's doing an upward variance because of your DWI problem and your alcohol problem. A longer sentence will help you get treatment to see if you can actually beat it when you get out. That's on the oral record in his pronouncement of sentence. Why isn't that just discussing the opportunities for rehab that TAPIA allows to be discussed? Well, Your Honor, because that gets into his mind of why he's enlarging the sentence, to give him that opportunity to get that. And that's different from saying, well, when you're in the Bureau of Prisons, I'm going to recommend the alcohol and substance abuse program or even the RDAP program. And so getting into his mind, which I recognize is difficult and this Court has to do it, and the only thing we have is the oral pronouncements. And so in that oral pronouncement, he says specifically that he's giving him a longer sentence to afford him that opportunity, which is different. He says a longer sentence will help you get treatment, but then he says because of your three DUIs and to protect society from your alcoholism, I'm going to increase the sentence. So he's saying both. I believe he is saying both. And the fact that he wants to protect society, he hasn't taken into account that the guidelines itself have that protection in them, as does the immigration code. The judge knows that he's going to be deported. He said so in his statement of the conditions of supervised release, that upon release from imprisonment, he's to be given to a duly authorized immigration official for deportation. He's got three years of supervised release, so if he comes back into the country he's going to get sentenced under this case again if he's revoked and another 1326 charge. So built into the system is the protection of society. And so it's only that he's thinking of what happened in the prior case, in his two pages prior to his oral pronouncement of sentence, that leads anyone to believe reasonably that he's thinking about the deaths of these three individuals when he's enlarging the sentence of this particular defendant. Mr. Rosales, Quintero, killed three people, and so he's basically enlarging the sentence of Mr. Botello to make sure it doesn't happen again, which — Were these objections raised at sentencing? Your Honor, at the conclusion of sentencing, I did object to the upward variance. So, yes, it was — it was raised. And since we are talking about the reasonableness of a sentence, the standard review is abuse of discretion. Oh, but did you raise the specific — of the Tapia error?  And I'm not basing this solely on Tapia. I'm basing it on the totality of the circumstances and the totality of what Judge Mazant stated during the oral pronouncement of the sentence. I would agree if I — How is the district judge supposed to know the basis of the objection if it's not specified that it's — that it's Tapia error? Your Honor, he doesn't need to know that it's just Tapia error because I'm not objecting to Tapia. I'm objecting to the totality of the enlargement of the sentence. Okay. So you're not — you're not pressing Tapia error to us today. Is that right? I'm pressing Tapia as one of the ways that you can judge the reasonableness of the sentence. I'm not pressing Tapia per se. And so in Gall, the Supreme Court said that this Court is to look at the reasonableness of every sentence. And one of the ways it looks at it is for the abuse of discretion. And one of the ways that the Court can decide that the discretion has been abused by a district court is by — I argue that it is abuse of discretion for a district judge to make the common sense observation that DWIs, repeated DWIs are at higher risk to the public and calling up situations where people were killed by that. And it's fortunate it didn't happen here. All those comments are there too. So anyway, I don't see what the unreasonable — if you cast this in terms of unreasonableness, what's unreasonable about that? I'm not sure you want to walk so quickly away from Tapia, Tapia error or not. Your Honor, if I'm leading the Court to believe that I'm walking away from Tapia error, I apologize because I'm not. What I'm saying is when you look at the totality of the circumstances — I'm not suggesting to you that it's here, but it may be that's your strongest argument. Your Honor, and I believe you're right. That is amongst the two prongs. The first prong is in unreasonableness whether or not a prong under 3553A has been unduly weighted. And that's what I'm saying with regard to the DWI issue and the deaths of the three individuals. He gave undue weight to that particular prong. On the Tapia prong, one of the prongs of abuse of discretion is did he give undue weight or any weight to something that is irrelevant or immaterial or illegal. And that's where the Tapia error comes in. And so when you put — That principle is easy to state, but it's very, very difficult to apply, as my colleague suggested to you. Because if a district judge is talking to a defendant and sentencing him, the notion that he shouldn't sentence because for the purpose of rehabilitation is the principle. Now, he has to express himself in a way that you don't infer from that that he's given you this sentence in order to rehabilitate you. And that's a tricky line to walk. I agree, Your Honor. And I certainly don't envy this Court having to review those sentences. And under the abuse of discretion standard that's given, it would be fantastic had the Supreme Court given us a very bright line. But they didn't. They gave us this particular framework under Gall. This Court has recognized that framework consistently. And we don't have to — you don't have to conclude that it was a dominant factor, just that it was a factor that the Court considered. And if he considered it, then it was improper under the second prong of unreasonableness to have considered it. And I believe the totality of the record, the oral record that Judge Mazant pronounced, does provide that for the Court to consider. That's a clever articulation of it. I'm not sure it works, but — Your Honor, without — I understand your argument. I appreciate it as an advocate. Thank you. Without further questions, I will withdraw until my rebuttal. Thank you. You've saved time for rebuttal, Mr. Arambi. Thank you. Ms. Hagan. Is this plain error review or not? Yes, Your Honor. The applicable — excuse me. The applicable standard of review in this case is plain error. And that is because the objection that was made, which was, insofar as this sentence constitutes an upward variance, please note the defendant's objection for purposes of the appellate record did nothing to inform Judge Mazant that the appellant believed that he had considered any inappropriate factors or that he had placed an inappropriate amount of weight on any factors. And because of that, Judge Mazant did not have an opportunity to correct or to explain this supposed error. And furthermore, here we are as parties before the Court in an expensive appellant proceeding. And because the parties do dispute the standard of review, we ask, we think it's appropriate that the Court should consider the fact that the appellant has not filed a reply brief. Because of that, he has not contradicted our contention that plain error review is the appropriate standard, nor has he breathed the four prongs of plain error, which are, of course, his burden to show. Yes. My understanding of our published case law is that you immediately lose on plain error review if you don't brief all four prongs as the appellant. Is that right? That's my reading as well. So, but going on forward and addressing those prongs, first with regard to prongs 1 and 2, Judge Mazant did not plainly or obviously err by considering the defendant's needs as a dominant factor when imposing or lengthening the sentence. And that's important because in this circuit, as well as in several others, in fact, the majority of other circuits, if the district judge considers rehabilitative needs, it's not a problem unless that is the dominant factor in imposing or lengthening the sentence. And in this case, Judge Mazant, on five, no less than five occasions, either explicitly or implicitly, implicitly said that his main concern was protecting the public from Mr. Batella-Zapata's drinking and driving while impaired. Contrast that with the one time, the single time that Judge Mazant mentioned at the end of the hearing when he said that a longer sentence would allow the defendant to get alcohol treatment and to hopefully protect his — solve his problem. So as to the other case that Judge Mazant mentioned, that is not an improper factor at all. It's common sense, for one thing, that people who drink too much alcohol and become intoxicated and drive are a danger to the community. That's not only common knowledge, but the courts have said that it's appropriate for a judge to consider his experiences in other cases. And it's also not any different than what the district court considered in the Gall case, effectively, because in Gall, the district court considered a study, not of that particular defendant, but a study that shows that people's brains do not mature until they're 25, generally. And the district court then considered that study as a reason to mitigate the defendant's sentence because he was only 21. So technically, there's really no difference because the other case does relate to this defendant's circumstances and his characteristics and what type of harm he could impose on the public. So as to prompts 3 and 4, as we've already noticed, the appellant has said that the Supreme Court has not met his burden of establishing those prompts. But we think we should point out cautions that the Supreme Court has said, which are that courts of appeals should overturn only in exceptional cases and should correct only particularly egregious errors and should use plain error sparingly and should grant relief based on it rarely. And, of course, it pointed out that meeting all four prompts of the plain error test is difficult, as it should be. That test is not met here. This is not an especially sympathetic case in which the demands of justice so seriously undermine the integrity of the system that should move this Court to depart from its well-established procedures to correct this supposed error. What the Court has instead is an individualized assessment made by Judge Mazzano. Let me ask you a couple of questions about the standard by which we review asserted tapia error. I'm looking at Justice Kagan's opinion when she explains that in that case before the Court, the record indicates that the Court may have done more, that it may have selected the length of the sentence to ensure that tapia could complete the 500-hour drug program. And she goes on to say that a sentencing judge can discuss, consider, and should, but they cannot then translate that into the length of the sentence. Then that's prohibited. Looking at that precise language, turn to exactly what the district court said here and comment on that, if you would, please. Yes, sir. The first words concerning the defendant's alcohol problems came from my colleague on the other side. He said that the defendant was an alcoholic who had not learned his lesson. Well, look at this language. Because of your DUI problem, this is the district court here, and your alcohol problem, a longer sentence will help you get treatment to see if you can actually beat that when you get out. Yes, Your Honor. What I'd like to do with this is, with the Court's permission, is I'd like to start earlier than that, and I would like to point out the five occasions on which Judge Mazant showed that his main concern was protecting the public, not in rehabilitating the defendant. So the first statement by Judge Mazant is he said, the problem that I am having is that he, the defendant, is driving while he is intoxicated. At that point, he mentions the other case, and that is to punctuate the danger that this defendant imposes by being deported, coming back in, driving while intoxicated again. The second time Judge Mazant indicated his concern about the public was when he asked, so tell me why I shouldn't give a more severe sentence. And Judge Mazant said, he is clearly not understanding. He cannot drink and drive. And he mentions that the defendant had not, apparently not gotten treatment. Again, that is an expression of his concern for the public. Then the third time is when Judge Mazant talked about he needed to impose an appropriate sentence, irrespective of the guidelines. And in that instance, he said, I have an obligation to protect society. You have not taken it seriously. You keep coming back to the U.S. and driving drunk. But for the grace of God, someone could have been killed or injured. And that's on the record at page 75. Then the fourth time that, excuse me, that Judge Mazant again emphasized his duty to protect the public was when he said, let's see, he talked about the other case and he said, Mr. Arambidi was the attorney and the person that was involved was not driving drunk, but he was impaired, sleepy, and he killed people. Luckily, that has not happened to you. Again, that is an expression of a concern for protecting the public. It doesn't matter if the defendant stays at home and drinks alcohol until he passes back. The judge is concerned with him getting in a car once he's impaired. And then finally, the part that you, Judge Higginbotham, was mentioning, Judge Mazant said, but I'm doing an upward variance because of your DWI problem and your alcohol problem. And this is what was quoted in the appellant's brief. A longer sentence will help you get treatment to see if you can actually beat this when you get out. And the Court continued, he said, so that's the basis because of your three DUIs and to help protect society from your alcohol issue, I am going to increase the sentence. So because the Court in this case, Judge Mazant, did not, unlike cases where this court did not tie the sentence to any particular BOP program. He didn't even discuss any of the BOP programs. The district judge here did not explicitly say that the sentence needed to be longer to give the defendant time to complete a BOP program. And as I said, I think, he emphasized protecting the public, not the appellant's need for treatment. So in this circuit, as in many others, it is appropriate for the Court to consider the defendant's rehabilitative needs. That's appropriate. But that cannot be the dominant reason for imposing. Well, isn't the most compelling answer to this difficulty that this particular statutory provision imposes on the courts the strict insistence that the error be plain and it's anything but plain in this kind of factual matrix. The idea being that the fundamental underlying purpose of that objection is to allow the defendant to articulate exactly what his purpose is, not be trapped by an effort to explain, which we want courts to do. Part of our problem is we agree with it that district courts ought to be able to talk to defendants. Then we hem them in with a bunch of traps and so forth, so it becomes a ritualistic reading of things that really dissipates the sentencing process. I think our Court is struggling with that now to achieve that, at least in terms of objective. I suspect the Court is pretty much open-minded about that. We think that the district judge, that Judge Messant here, did actively address and interact with the appellant. Not only did he give the appellant his right to allocate, but he talked to the appellant when saying, you are not understanding. You are putting people in danger. And so the record as a whole makes it clear that that was the dominant purpose here, to protect the public. So in this case, Judge Messant made an individualized determination of what the appropriate sentence should be. He accurately calculated the sentencing guidelines and determined that that advisory guideline range was not appropriate because this defendant keeps being deported and coming back to the United States and drinking and driving, thereby endangering the public. For all of the reasons we've discussed today and for those reasons set forth in our brief, we ask the Court to affirm Judge Messant's decision. And if there are no further questions. Thank you, Ms. Hagan. Thank you, Judge. Mr. Arambi, do you say time for rebuttal? I want to be sure I understand. You're saying that your objection in the district court was that the sentence was unreasonable. You said that at the end of the sentencing hearing. And your argument today is that the sentence is unreasonable. Is that right? That's correct, Your Honor. In fact, the Supreme Court — Well, all right. So where I'm having trouble, I went back and looked at your brief. It's a fairly short brief. I flipped through it twice. I don't find that the word unreasonable appears anywhere in your brief. Maybe I missed it, but I don't think I did. Can you point us to where in your brief you argued that the sentence was unreasonable? Your Honor, I admit that word is not in there. It's to be inferred from my issue, which was that the judge utilized that information that he should not have, which made the sentence unreasonable. Anything else? Honor, rebuttal? Yes, Your Honor. With regard to the standard review, Gaul makes it very clear that appellate courts must review all sentences for reasonableness under the deferential abuse of discretion standard. In doing so, they take a look at the totality of the circumstances. All that's contained in the Gaul case. To make a defendant — or to require a defendant to issue specific objections when the judge decides to shoot from the hip and do an upward variance places the defendant at a disadvantage. This is not a case where there were objectionable issues within the PSR. So, of course, we wouldn't have objected to PSR. The PSR was calculated properly. So that's not a problem. So we didn't have objections up front. We were asked by Judge Bazant, why shouldn't I upward vary? We placed our objections or our reasons on the record as best we could, not having any notice at all that he was contemplating that upward variance. Your Honor, so this Court must review all sentences for reasonableness, and that has been the standard. There is no other standard. The test, as I said on my initial opening, was that one prong, he overly relied on the DWIs and protecting society in that there were other things that protect society, like being deported, like the supervised release issue. On a Texas law, if a man has at least two DWIs and he goes out drunk again, hits somebody and kills them, a grand jury is going to indict him for some level of homicide. That's a common practice. That's a very strong expression by the law of the reasonableness We're talking about the observation of the threat that's posed by people who persist in driving while intoxicated. All the district court here has done is simply to invoke what the state itself, the state here expressed very strongly as to the reasonableness of it. It's not only unreasonable, they'll send you to prison for a long time for it. That's the reaction that I have. Well, Your Honor, what I believe is What's unreasonable? How can it be unreasonable for the district judges to make those observations? What's unreasonable about it, Your Honor, is that it's a form of pre-crime. We think that you're going to be able to kill somebody in the future, and therefore we're going to enlarge your sentence to keep you from having that opportunity. Since the guidelines themselves and the statute themselves take that possibility into account, particularly protecting society by deporting this individual. That means you're sliding back into a Tapia argument. The other argument. No, Your Honor. Again, that goes back to his reliance on the DWIs and killing people. So that's in the reasonableness on the first prong, not on the Tapia, which Tapia is relying on the second prong of unreasonableness. Your Honor, my time here is short once again. If the court is really struggling with this issue and would like further Supreme Court direction, I suggest that the quickest way to do that is to grant my request, reverse it, and the government will surely appeal and take it up to the Supreme Court, in which case we'll get hopefully clearer direction, Your Honor. Your Honor, I would note in my last seconds, this is my final act as an assistant federal defender. I'm retiring this month at the end of this week. I think this has either been my sixth or my seventh argument before this court. I've appreciated every time that I've been heard, and I thank you for the honor of being here. Thank you, Mr. Ehrenbied. We always get good service from your office and appreciate your dedication to your clients through the years. Thank you, Your Honor. Your case is under submission. The court will take a brief recess before hearing the final two cases.